

U.S. Department of Justice

*Michael J. Sullivan*
United States Attorney
District of Massachusetts

---

Main Reception: (617) 748-3100

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 1, 2004

Michael A. Collora, Esq.
Dwyer & Collora
600 Atlantic Avenue
Boston, MA 02210

FILED
In Open Court
USDC, Mass.
Date 4-27-04
By_____
Deputy Clerk

Re: Peter Cavallaro, Sr.

Dear Mr. Collora:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Peter Cavallaro, Sr. ("Defendant"), in the above-captioned case. The Agreement is as follows:

1. Change of Plea

At the earliest practicable date, Defendant shall waive Indictment and plead guilty to counts one and two in the attached Information in which he is named. Defendant expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crimes charged in counts one and two of the Information, and is in fact guilty of those offenses.

2. Penalties

Defendant faces the following maximum penalties on each of counts one and two of the Information:

  a. No more than 3 years imprisonment;
  b. A fine of up to $100,000;
  c. Costs of prosecution;
  d. Special assessment of $200; and
  e. Three years supervised release

3. <u>Sentencing Guidelines</u>

The parties will take the following positions at sentencing under the United States Sentencing Guidelines:

    a. The parties agree that the United States Sentencing Guidelines incorporating guideline amendments through November 1, 1998 shall apply to this offense;

    b. The parties stipulate and agree that U.S.S.G. § 2T1.1 applies to the offense conduct set forth in counts 1 and 2 of the Information;

    c. The parties stipulate and agree that the tax loss caused by the offenses set forth in counts 1 and 2 of the Information was more than $120,000 and not greater than $200,000;

    d. The parties stipulate and agree that based on the foregoing stipulated tax loss, U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(J) set an offense level of fifteen (15).

<u>Acceptance of Responsibility</u>

    e. Based on Defendant's prompt acceptance of personal responsibility for the offense(s) of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by two levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1 to an offense level thirteen (13).

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

    (a) Fails to admit a complete factual basis for the plea;

    (b) Fails to truthfully admit his conduct in the offenses of conviction;

    (c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

    (d) Fails to provide truthful information about his financial status;

    (e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

(f) Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Agreement; and/or

(j) Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of this Agreement.

4. Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence before the District Court:

(a) A sentence at the low end of the guideline range as calculated in paragraph 3, above;

(b) A fine of $3,000 to be paid at sentencing;

(c) A $200 special assessment; and

(d) Three years supervised release.

During the period of supervised release, Defendant must, within six months of sentencing or release from custody, whichever is later:

(a) Cooperate with the Examination and Collection Divisions of the Internal Revenue Service;

(b) Provide to the Examination Division all financial information necessary to

        determine Defendant's prior tax liabilities;

(c)     Provide to the Collection Division all financial information necessary to determine Defendant's ability to pay;

(d)     File accurate and complete tax returns for those years for which returns were not filed or for which inaccurate returns were filed; and

(e)     Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties.

The Defendant reserves the right to move for a downward departure from the sentencing range established by the U.S. Sentencing Guidelines on one or more of the following grounds:

1.     Age, health & physical condition (U.S.S.G. §§ 5H1.1 & 5H1.4);

2.     Diminished mental capacity (U.S.S.G. § 5K2.13);

3.     Collateral consequences/potential loss of employment of innocent employees; and

4.     Prior records of good works/aberrant nature of offense conduct.

The Defendant stipulates and agrees that he will not seek, and there is no basis for, a departure from the sentencing range established by the United States Sentencing Guidelines on any other grounds. The Defendant further agrees that he will file his motion for a downward departure, and any legal memoranda in support thereof, at least fourteen days prior to sentencing. Any departure grounds not raised and filed with the Court fourteen days prior to sentencing shall be deemed waived.

In the event Defendant moves for a downward departure based on his medical condition and/or mental capacity, the Defendant will, forthwith upon request, execute all releases and other documentation necessary to permit the U.S. Attorney and its experts to obtain access to Defendant's medical and mental health records; authorize his care providers to discuss his condition with the U.S. Attorney and his agents, as well as experts retained by the government; and provide all written evidence supporting said departure request(s), including expert reports, at least thirty (30) days prior to sentencing.

The U.S. Attorney will oppose any downward departure.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5. <u>Payment of Mandatory Special Assessment</u>

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6. <u>Court Not Bound By Agreement</u>

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

7. <u>Information For Presentence Report</u>

Defendant agrees to provide all information requested by the U.S. Probation Office concerning his assets.

8. <u>Payment and Civil Liability</u>

Defendant agrees to pay the sum of $303,518 to the Internal Revenue Service, by certified check, at or before sentencing, with said sum to be applied against the outstanding taxes and interest owed by Defendant for the years 1997 and 1998.

Acceptance of the foregoing payment shall not be deemed to constitute satisfaction in full of Defendant's outstanding tax liability and by entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement.

Defendant agrees to cooperate with employees of the IRS, the Civil Division of the U.S. Attorney's Office, and law enforcement agents working with attorneys in the Civil Division of the U.S. Attorney's Office, in making an assessment of his civil liabilities. Defendant specifically authorizes release by the IRS to the aforementioned agencies and their representatives of

information for purposes of making that assessment. Defendant further agrees to assent to the filing and allowance of a motion under Rule 6(e) of the Federal Rules of Criminal Procedure to permit the disclosure of matters occurring before the grand jury for this purpose.

9.  Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

10.  Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation. In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

11.  Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

12.  Complete Agreement

This letter contains the complete agreement between the parties. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Michael J. Pineault.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JAMES B. FARMER
Assistant U.S. Attorney
Chief,
Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

MICHAEL J. PINEAULT
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

    I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

_Peter Cavallaro_
Peter Cavallaro, Sr.
Defendant

Date: 3-17-04

    I believe that Peter Cavallaro, Sr. has read this Agreement and we have discussed its meaning. I believe that he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

_Michael A Collora_
Michael A. Collora, Esq.
Attorney for Defendant

Date: March 17, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| v. | ) ) ) | VIOLATIONS: 26 U.S.C. § 7206(1) (False Returns) |
| PETER CAVALLARO, SR. | ) ) | |
| Defendant. | ) ) ) | |

**INFORMATION**

The United States Attorney charges that:

GENERAL ALLEGATIONS

1. At all times material to this Information, defendant PETER CAVALLARO, SR. ("CAVALLARO") was an individual who resided at 8 Smith Hill Road, Lincoln, Massachusetts.

2. At all times material to this Information, CAVALLARO operated a family-owned business named Albany Street Wholesale Florist, Inc. ("Albany" or the "company"). CAVALLARO was an officer of Albany.

3. At all times material to this Information, Albany had offices at 540 Albany Street, Boston, Massachusetts and served as a wholesaler and retailer of flowers, plants and related products.

4. On or about July 15, 1998, CAVALLARO filed with the Director, Internal Revenue Service at Andover, Massachusetts a joint U.S. Individual Income Tax Return for the calendar year 1997. On the return, CAVALLARO reported total income for 1997 of $83,000.

5. On or about April 15, 1999, CAVALLARO filed with the Director, Internal Revenue Service at Andover, Massachusetts a joint U.S. Individual Income Tax Return for the

calendar year 1998. On the return, CAVALLARO reported total income for 1998 of $233,460.

6.   CAVALLARO signed written declarations in connection with both returns verifying that the returns were made under the penalties of perjury.

Diverted Albany Business Receipts

7.   From in or about April, 1997 through in or about October, 1998, CAVALLARO diverted from the business receipts of Albany, for his personal benefit, eighteen checks representing payments made by customers for goods and services furnished to them by Albany (hereafter, the "diverted business receipts"). The total dollar amount of the diverted business receipts was $442,614.50. The dates, amounts and payors of the eighteen checks were as follows:

| Payor | Date of Check | Check No. | Amount |
|---|---|---|---|
| Nashoba Valley Aluminum, Inc. | 4-6-97 | 178 | $55,000.00 |
| Nashoba Valley Aluminum, Inc. | 4-6-97 | 179 | $55,000.00 |
| Nashoba Valley Aluminum, Inc. | 1-28-98 | 1003 | $60,000.00 |
| Nashoba Valley Aluminum, Inc. | 5-29-98 | 1010 | $75,000.00 |
| Nashoba Valley Aluminum, Inc. | 5-29-98 | 1011 | $60,000.00 |
| Nashoba Valley Aluminum, Inc. | 10-30-98 | 0106 | $25,000.00 |
| Nashoba Valley Aluminum, Inc. | 10-30-98 | 1045 | $50,000.00 |
| Paul Vrusho | 2-6-98 | 340479 | $21,107.00 |
| Paul Vrusho | 2-6-98 | 342696 | $27,000.00 |
| Sunshine Fruit Co., Inc. | 12-30-97 | 13391 | $5,821.00 |
| Warehouse Flowers, Inc. | 4-6-97 | 1840 | $500.00 |
| Warehouse Flowers, Inc. | 5-5-97 | 1873 | $900.00 |

| | | | |
|---|---|---|---|
| Warehouse Flowers, Inc. | 7-16-97 | 1971 | $290.00 |
| Warehouse Flowers, Inc. | 10-9-97 | 2151 | $785.00 |
| Allen's House of Flowers | 5-4-97 | 1468 | $464.00 |
| Boston Flower Exchange, Inc. | 12-31-97 | 0766 | $5,000.00 |
| Silvio Petraglia | 11-23-97 | 2284 | $100.00 |
| Collura's Flowers | 1-6-98 | 185233168 | $647.50 |
| | | **TOTAL** | **$442,614.50** |

8. CAVALLARO did not disclose or report the income represented by the diverted business receipts on his joint U.S. Individual Income Tax Returns for 1997 and 1998.

Unreported Interest Income

9. On or about July 18, 1996, CAVALLARO extended a loan of $100,000 to the trustees of Harrow's Realty Trust ("Harrow's"). Thereafter, CAVALLARO received monthly payments of interest and principal until the loan was paid off in full in or about November, 1998. The monthly payments were made by checks made payable to CAVALLARO. CAVALLARO deposited the checks into personal bank accounts that he maintained.

10. On or about February 27, 1998, CAVALLARO extended a loan of $100,000 to the trustee of Camblex Realty Trust ("Camblex"). Thereafter, CAVALLARO received monthly interest payments on the loan, including interest payments made in each of the remaining months of 1998. The payments were made by checks made payable to CAVALLARO. CAVALLARO deposited the checks into personal bank accounts that he maintained.

11. CAVALLARO did not disclose or report the income represented by the interest payments made to him by Harrow's or Camblex on his federal income tax returns for 1997 and 1998. The amounts of the unreported interest were as follows:

|  | **Unreported Interest** | |
|---|---|---|
| **Payor** | **1997** | **1998** |
| Harrow's Realty Trust | $4,661.76 | $5,465.54 |
| Camblex Realty Trust |  | $12,500.00 |
|  | **TOTAL** | **$22,627.30** |

Unreported Capital Gains

12.   On or about May 16, 1997, CAVALLARO entered into an agreement with RJR Development ("RJR") pursuant to which RJR was granted the right to purchase certain real property owned by CAVALLARO at 327 Main Street, North Reading, Massachusetts in exchange for the payment by RJR of a nonrefundable deposit and additional nonrefundable payments made during the life of the purchase period.

13.   CAVALLARO received a total of $43,500 in nonrefundable payments from RJR in 1997 and 1998. CAVALLARO did not disclose or report the income represented by any of these payments on his federal income tax returns for 1997 and 1998. The amounts of the unreported payments were as follows:

|  | **Unreported Payments** | |
|---|---|---|
| **Payor** | **1997** | **1998** |
| RJR Development | $29,000.00 | $14,500.00 |
|  | **TOTAL** | **$43,500.00** |

14.   Through the foregoing conduct, specifically (a) his failure to report as income on his personal returns the business receipts that he diverted from Albany; and (b) his failure to report on his personal returns the interest and capital gains income that he received from

Harrow's, Camblex and RJR, CAVALLARO did willfully make, subscribe and file with the Internal Revenue Service false and fraudulent U.S. Individual Income Tax Returns for each of the calendar years 1997 and 1998.

## COUNTS ONE and TWO

### (False and Fraudulent Returns - 26 U.S.C. § 7206(1))

15.   The United States Attorney re-alleges and incorporates by reference paragraphs 1-14 of this Information and further charges that:

16.   On or about the dates set forth below, in the District of Massachusetts, the defendant PETER CAVALLARO, SR., a resident of Lincoln, Massachusetts, did willfully make and subscribe joint U.S. Individual Income Tax Returns for the calendar years 1997 and 1998, which were verified by written declarations that they were made under the penalties of perjury and were filed with the Director, Internal Revenue Service at Andover, Massachusetts, which said income tax returns CAVALLARO did not believe to be true and correct as to every material matter in that the said returns failed to disclose or report income that CAVALLARO received in the form of business receipts that he diverted from Albany and interest and capital gains payments that he received from Harrow's, Camblex and RJR, whereas, as CAVALLARO then and there well knew and believed, he had in fact received and was required to report on his returns the income represented by said diverted business receipts, unreported interest and unreported capital gains, as set forth in the following table:

5

| Count | Year | Filing Date | Diverted Business Receipts | Unreported Interest | Unreported Capital Gains | Total Unreported Income |
|-------|------|-------------|----------------------------|---------------------|--------------------------|-------------------------|
| 1 | 1997 | 7/15/98 | $113,039 | $4,662 | | $117,701 |
| 2 | 1998 | 4/15/99 | $329,576 | $17,966 | $43,500 | $391,042 |

All in violation of Title 26, United States Code, Section 7206(1).

MICHAEL J. SULLIVAN
United States Attorney

By: _____
Michael J. Pineault
Assistant U.S. Attorney
One Courthouse Way, Suite 9200
Boston, MA 02210

Dated: March \_\_\_, 2004