UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> PETER CAVALLARO, SR. ) <br> ) <br>       Defendant. ) <br> ) | CRIMINAL NO. 04-10100-PBS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this memorandum in advance of the July 22, 2004 sentencing of Peter Cavallaro, Sr.

Overview

Peter Cavallaro, Sr. ("Cavallaro") waived indictment and pleaded guilty on April 27, 2004 to a two-count Information charging him with filing false U.S. Individual Income Tax Returns for the years 1997 and 1998, in violation of 26 U.S.C. § 7206(1). Cavallaro's convictions arose out of his failure to disclose or pay taxes on unreported income of $508,742, consisting of $442,614.50 in diverted business receipts and $66,127.30 in unreported interest and capital gains income.

Cavallaro admitted at the Rule 11 hearing to having filed false 1997 and 1998 tax returns that failed to disclose the foregoing income. Pursuant to the parties' plea agreement, Cavallaro has further stipulated that the tax loss caused by his criminal conduct falls in the range between $120,000 and $200,000 and that the resulting offense level under the United States Sentencing Guidelines – after acceptance and before consideration of any motion for downward departure -- is thirteen.

As discussed in more detail in Part IV.C of this memorandum, in light of Cavallaro's admissions and his stipulation to the applicable Guidelines loss range, the Supreme Court's decision in Blakely v. Washington, 2004 WL 1402697 (June 24, 2004) has no effect on the sentencing outcome in this case.[1]

**I.      Factual Background**

There are no material disputes between the parties over the relevant facts:

As summarized in the Presentence Report ("PSR"), at all relevant times, Cavallaro owned and operated Albany Street Wholesale Florist, Inc. ("Albany"), a family-owned business that serves as a wholesaler/retailer of flowers, plants and related products.

Cavallaro did not maintain formal books and records of account for Albany. Instead, Cavallaro agreed with his accountant that he would conduct all business-related transactions exclusively through business bank accounts. All corporate receipts would be deposited into corporate accounts and all corporate expenses would be paid out of the same accounts.

Under this system, the accountant was entirely dependent on bank records in preparing the tax returns for Albany and for Cavallaro. The accountant determined gross receipts by totaling the yearly deposits into the business accounts and then backing out nontaxable deposits, such as loans from shareholders, that Cavallaro noted in the checkbook. The accountant determined business expenses from the cancelled checks written off the same accounts.

Unbeknownst to his accountant, Cavallaro did not deposit all of Albany's receipts into

---

[1] It is the government's position that Blakely neither invalidated the federal Sentencing Guidelines nor held that its rule applies to the Guidelines. See 2004 WL 1402697, at *6 n.9 ("[t]he Federal Guidelines are not before us, and we express no opinion on them"). In view of Cavallaro's factual admissions and stipulations, however, the court need not address this issue.

the company's business accounts. Instead, from in or about April, 1997 through in or about October, 1998, Cavallaro diverted from the business receipts of Albany, for his personal benefit, eighteen checks representing payments made by customers for goods and services furnished to them by Albany (hereafter, the "diverted business receipts"). The total dollar amount of the diverted business receipts was $442,614.50. The dates, amounts and payors of the eighteen diverted checks were as follows:

|    | **Payor** | **Date of Check** | **Check No.** | **Amount** |
|----|-----------|-------------------|---------------|------------|
| 1  | Nashoba Valley Aluminum, Inc. | 4-6-97 | 178 | $55,000.00 |
| 2  | Nashoba Valley Aluminum, Inc. | 4-6-97 | 179 | $55,000.00 |
| 3  | Nashoba Valley Aluminum, Inc. | 1-28-98 | 1003 | $60,000.00 |
| 4  | Nashoba Valley Aluminum, Inc. | 5-29-98 | 1010 | $75,000.00 |
| 5  | Nashoba Valley Aluminum, Inc. | 5-29-98 | 1011 | $60,000.00 |
| 6  | Nashoba Valley Aluminum, Inc. | 10-30-98 | 0106 | $25,000.00 |
| 7  | Nashoba Valley Aluminum, Inc. | 10-30-98 | 1045 | $50,000.00 |
| 8  | Paul Vrusho | 2-6-98 | 340479 | $21,107.00 |
| 9  | Paul Vrusho | 2-6-98 | 342696 | $27,000.00 |
| 10 | Sunshine Fruit Co., Inc. | 12-30-97 | 13391 | $5,821.00 |
| 11 | Warehouse Flowers, Inc. | 4-6-97 | 1840 | $500.00 |
| 12 | Warehouse Flowers, Inc. | 5-5-97 | 1873 | $900.00 |
| 13 | Warehouse Flowers, Inc. | 7-16-97 | 1971 | $290.00 |
| 14 | Warehouse Flowers, Inc. | 10-9-97 | 2151 | $785.00 |
| 15 | Allen's House of Flowers | 5-4-97 | 1468 | $464.00 |

| 16 | Boston Flower Exchange, Inc. | 12-31-97 | 0766 | $5,000.00 |
| 17 | Silvio Petraglia | 11-23-97 | 2284 | $100.00 |
| 18 | Collura's Flowers | 1-6-98 | 185233168 | $647.50 |
| | | | **TOTAL** | **$442,614.50** |

Each of the above checks constituted payment to Albany for goods and services furnished by Albany. At Cavallaro's request, the first seven checks, written by Nashoba Valley Aluminum, were made payable to Cavallaro, personally, or to his wife Elizabeth. The remaining checks were made payable to Albany.

Cavallaro diverted and deposited 16 of the 18 checks into personal bank accounts that he maintained, thus ensuring that his accountant would not identify the funds – or include them on the relevant returns – as business receipts of Albany. Cavallaro deposited the remaining checks, which consisted of the two October 30, 1998 checks from Nashoba, into an Albany business account. In doing so, however, Cavallaro falsely characterized the deposit, in an entry that he made in Albany's checkbook, as constituting a loan of personal funds from him to the company. Based on that entry, the accountant did not believe the funds to represent business receipts and he did not include them as such on the returns.

Because Cavallaro diverted the foregoing checks for his own benefit, he was obligated to report the payments as income and pay personal taxes on them. He did not. On his U.S. Individual Income Tax Return for 1997, which Cavallaro signed under the penalties of perjury and filed with the IRS on or about July 15, 1998, Cavallaro reported total income of $83,000. On his U.S. Individual Income Tax Return for 1998, which Cavallaro signed under the penalties of perjury and filed with the IRS on or about April 15, 1999, Cavallaro reported total income of

$233,460. Neither of these reported income figures included any part of the $442,614.50 in diverted business receipts.

In addition to diverting nearly a half million dollars in Albany business receipts, Cavallaro also failed to report certain interest and capital gains income that he generated from three loan/real estate transactions.

Unreported Interest Income

The first two transactions consisted of separate $100,000 loans that Cavallaro extended to Harrow's Realty Trust ("Harrow's") and to Camblex Realty Trust ("Camblex"). Cavallaro extended the loan to Harrow's on or about July 18, 1996. Thereafter, Cavallaro received monthly payments of interest and principal until the loan was paid off in full in or about November, 1998. The monthly payments were made by checks made payable to Cavallaro. Cavallaro deposited the checks into personal bank accounts that he maintained.

Cavallaro extended the loan to Camblex on or about February 27, 1998. As with the Harrow's loan, Cavallaro received monthly interest payments from Camblex, including interest payments made in each of the remaining months of 1998. The payments were made by checks made payable to Cavallaro. Cavallaro deposited the checks into personal bank accounts that he maintained.

Cavallaro did not disclose or report the income represented by the interest payments made to him by Harrow's or Camblex on his federal income tax returns for 1997 and 1998. The amounts of the unreported interest were as follows:

|  | Unreported Interest | |
|---|---|---|
| **Payor** | **1997** | **1998** |
| Harrow's Realty Trust | $4,661.76 | $5,465.54 |
| Camblex Realty Trust |  | $12,500.00 |
|  | **TOTAL** | **$22,627.30** |

Unreported Capital Gains

The third transaction involved an agreement that Cavallaro entered into with RJR Development ("RJR") on or about May 16, 1997 pursuant to which RJR was granted the right to purchase certain real property owned by Cavallaro at 327 Main Street, North Reading, Massachusetts in exchange for the payment by RJR of a nonrefundable deposit and additional nonrefundable payments made during the life of the purchase period.

Cavallaro received a total of $43,500 in nonrefundable payments from RJR in 1997 and 1998. Cavallaro did not disclose or report the income represented by any of these payments on his federal income tax returns for 1997 and 1998. The amounts of the unreported payments were as follows:

|  | Unreported Payments | |
|---|---|---|
| **Payor** | **1997** | **1998** |
| RJR Development | $29,000.00 | $14,500.00 |
|  | **TOTAL** | **$43,500.00** |

Through the foregoing conduct, specifically (a) his failure to report as income on his personal returns the business receipts that he diverted from Albany; and (b) his failure to report on his personal returns the interest and capital gains income that he received from Harrow's, Camblex and RJR, Cavallaro did willfully make, subscribe and file with the Internal Revenue

6

Service false and fraudulent U.S. Individual Income Tax Returns for each of the calendar years 1997 and 1998.

### Tax Loss Computations

The combined tax loss associated with Cavallaro's false returns for the years 1997 and 1998 equals $173,531. That amount is based on unreported income of $508,742, consisting of $442,614.50 in diverted business receipts and $66,127.30 in unreported interest and capital gains income. The foregoing tax loss figure was computed from Cavallaro's actual returns, as follows:

|  | 1997 | 1998 |
|---|---|---|
| Taxable Income (as falsely reported on return) | $40,946.00 | $197,959.00 |
| Add: | | |
|    Diverted receipts | $113,039.00 | $329,576.00 |
|    Unreported interest income | $4,662.00 | $17,966.00 |
|    Unreported capital gains |  | $43,500.00 |
|    Itemized deductions | $2,265.00 | $11,731.00 |
|    Exemptions[2] | $636.00 | $3,348.00 |
| Corrected Taxable Income | $161,548.00 | $604,080.00 |
| Corrected Tax[3] | $42,226.00 | $176,094.00 |
| Tax reported on return | $6,139.00 | $38,650.00 |
| Additional tax due and owing | $36,087.00 | $137,444.00 |

---

    [2] The increase in income results in downward statutory adjustments to the amount of the itemized deductions and exemptions that Cavallaro was entitled to take, thereby further increasing his taxable income by the listed amounts.

    [3] The 1997 tax amount was computed using a tax rate schedule with joint filing status. The 1998 tax amount was computed using schedule D rates with joint filing status.

Pursuant to paragraph 3(c) of the parties' plea agreement, Cavallaro stipulated that the combined tax loss caused by the offenses to which he was pleading guilty – i.e., counts one and two of the Information – was "more than $120,000 and not greater than $200,000."

## II. Application of the Sentencing Guidelines

<u>Statutory Maximums</u>

The applicable statutory maximums on each of counts one and two of the Information are:

a. No more than 3 years imprisonment;
b. A fine of up to $100,000;
c. Costs of prosecution;
d. Special assessment of $200; and
e. Three years supervised release

<u>Sentencing Guidelines</u>

As set forth in the plea agreement, the parties have stipulated that the guidelines calculations should be performed pursuant to the Manual in effect at the time of the offense (November 1, 1998); that the applicable provisions are U.S.S.G. §§ 2T1.1 and 2T4.1; and that the combined tax loss resulting from the defendant's offense falls in the range between $120,000 and $200,000.  (<u>See</u> Plea Agreement ¶ 3).

The foregoing stipulations yield the following guidelines computation:

| | | |
|---|---|---|
| Tax Loss of More Than $120,000 and Not Greater Than $200,000 | 15 | §2T4.1(J) |
| Acceptance | -2 | §3E1.1 |
| **TOTAL** | **13** | Zone D (12-18 mos) |

The Probation Department concurs with this offense level. (PSR ¶ 37).

Cavallaro is in Criminal History Category I.  (PSR ¶ 40).  With an adjusted base offense

level of 13, the resulting sentencing range is twelve to eighteen months. The applicable fine range is $3,000 to $30,000. (U.S.S.G. §§ 5E1.2).

**III.    Sentencing Recommendation**

Pursuant to the terms of the parties' plea agreement, the government recommends that the Court impose a sentence at the low end of the applicable guidelines range – i.e., imprisonment of one year and a day. Consistent with the plea agreement, the government further recommends a fine of $3,000, a special assessment of $200, and three years supervised release. (See Plea Agreement ¶ 4).

**IV.    Other Sentencing Matters**

    A.    Restitution

Pursuant to paragraph 8 of the agreement, Cavallaro agreed to pay the sum of $303,518 to the Internal Revenue Service by certified check at or before sentencing, with said sum to be applied against the outstanding taxes and interest owed by Cavallaro for the years 1997 and 1998. That payment has, in fact, been made.

    B.    Downward Departure

Pursuant to paragraph 4 of the agreement, Cavallaro reserved the right to move for a downward departure from the sentencing range established by the U.S. Sentencing Guidelines on one or more of the following grounds: (a) age, health & physical condition (U.S.S.G. §§ 5H1.1 & 5H1.4); (b) diminished mental capacity (U.S.S.G. § 5K2.13); (c) collateral consequences/potential loss of employment of innocent employees; and (d) prior records of good works/aberrant nature of offense conduct.

Paragraph 4 required Cavallaro to file any such departure motion, together with any

supporting memoranda, at least fourteen days prior to sentencing and provided that any departure grounds "not raised and filed with the Court fourteen days prior to sentencing shall be deemed waived." Further, to the extent Cavallaro moved for a departure based on his medical condition or mental capacity, paragraph 4 required the defendant, inter alia, to provide to the government all written evidence supporting such departure request(s), including expert reports, at least thirty days prior to sentencing.

To date, Cavallaro has not filed any departure motions or served any expert reports. It is the government's understanding that Cavallaro intends to do so, but desires additional time to prepare the necessary documents. Towards that end, Cavallaro requested and obtained the government's assent to move to continue the sentencing. By electronic order dated July 14, 2004, the Court denied that motion and directed that sentencing proceedings at least commence, as scheduled, on July 22, 2004.

Should Cavallaro seek leave to file a departure motion and supporting expert reports, the United States requests that it be given sufficient time to review those materials and prepare an opposition, including time to obtain and submit any responsive expert reports that might be needed to address the defendant's departure arguments.

    C.    *Blakely*

As stated in footnote 1, above, it is the government's position that the Supreme Court's decision in Blakely v. Washington, 2004 WL 1402697 (June 24, 2004), has no effect on the court's imposition of sentence in this case. Blakely neither invalidated the federal Sentencing Guidelines nor held that its rule applies to the Guidelines.

Even, however, if this court were to conclude that Blakely applies to the Sentencing

Guidelines – a holding to which the government would object – the sentencing outcome in this case would be the same. That is because, even under the reasoning of the majority opinion in Blakely, "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 2004 WL 1402697, at *8.

Here, Cavallaro has stipulated that the combined tax loss caused by the offenses to which he has pleaded guilty – i.e., counts one and two of the Information – was "more than $120,000 and not greater than $200,000." (Plea Agreement ¶ 3(c)). He further stipulated that this loss resulted in a Guidelines offense level, prior to acceptance, of fifteen. (Id. ¶ 3(d)). The government is not requesting that the Court decide or impose any contested fact-based enhancements to this level.

Because a Guidelines sentence can be calculated in this case without any upward enhancements beyond the defendant's admissions and stipulations, the Guidelines remain applicable -- even under Blakely – and Cavallaro should be sentenced under them.

In view of the foregoing, and to avoid any need for a resentencing hearing depending on how the current uncertainty over Blakely ultimately is resolved, the government requests that the Court make clear, by articulating its sentencing determinations in the alternative, that it would arrive at the same outcome irrespective of whether Blakely does, or does not, apply to the federal Guidelines. Specifically, the government requests that the Court specify that it would impose the same sentence: (1) under the Guidelines without regard to Blakely; (2) in the court's discretion within the statutory range; and (3) under the Guidelines if Blakely applies.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MICHAEL J. SULLIVAN<br>United States Attorney |
| By: | /s/ **Michael J. Pineault**<br>Michael J. Pineault<br>Assistant U.S. Attorney<br>United States Courthouse, Suite 9200<br>1 Courthouse Way<br>Boston, MA  02210 |
| Dated: July 15, 2004 | (617) 748-3261 |