UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>PETER CAVALLARO, SR. )<br>)<br> ) | CRIMINAL ACTION<br>NO. 04-10100-PBS |

DEFENDANT'S MEMORANDUM REGARDING
IMPLICATIONS OF *BLAKELY v. WASHINGTON* AND OTHER
ISSUES TO BE ADDRESSED AT THE JULY 22, 2004 HEARING

In advance of the hearing scheduled for July 22, 2004, Defendant Peter Cavallaro submits this memorandum addressing: (1) the potential impact of the Supreme Court's decision in Blakely v. Washington, __ U.S. __, No. 02-1632, 2004 WL 1402697 (June 24, 2004) on sentencing in this case; and (2) other issues that undersigned counsel believe should be addressed at the upcoming hearing. As explained below, we believe that Blakely applies to the federal sentencing guidelines generally and applies in this case in particular because the government seeks to enhance Cavallaro's sentence based facts that he may not have admitted. To determine that more definitively, we have requested a copy of the transcript of Cavallaro's plea hearing, which, due to a backlog of similar requests, still has not been prepared and now may not be ready until Monday, July 26, 2004. Until we receive and have adequate time to review the transcript, we simply cannot effectively advise Cavallaro about his Blakely rights.

Additional time is also necessary because forensic psychiatric evaluation of Cavallaro took longer than anticipated – a delay caused mostly by additional neuropsychiatric testing and evaluation that was not originally contemplated. Only yesterday did we receive a final evaluation from Cavallaro's primary forensic psychiatrist, Julia M. Reade, M.D., explaining how

In Blakely, a sentencing under Washington state's sentencing guidelines, Blakely had pled guilty to the offense and admitted to facts in his plea colloquy supporting a sentence in the "standard range" of 49-53 months. Id. at *2-3. The judge imposed a sentence of 90 months based on a judicial finding of the additional fact of "deliberate cruelty." Id. The Court held that this 47-month increase violated Blakely's Sixth Amendment rights because the judge could not have imposed it "solely on the basis of the facts admitted in the guilty plea." Id. at *5, 10.

Post-Blakely, in federal cases where, as here, the defendant has already been convicted or pled guilty, the courts have considered three options: (1) convene a sentencing jury to determine the facts beyond a reasonable doubt; (2) apply those Guidelines elements supported by facts found by the jury or sworn to by the defendant in the plea colloquy, without applying additional Guidelines elements that would require post-conviction judicial fact-finding; or (3) declare the Guidelines unconstitutional in their entirety and sentence between the statutory minimum and the statutory maximum (as defined pre-Blakely), using the Guidelines as recommendations.[1]

The majority of courts have followed option 2, continuing to apply those Guidelines elements supported by facts found by a jury or sworn to by the defendant in a plea colloquy, without applying additional Guidelines elements that would require post-conviction judicial fact-finding. See United States v. Leach, No. 2:02-CR-00172-SD-14 (E.D. Pa. July 13, 2004); United States v. Robert William Montgomery, No. 2:03-CR-801 TS, 2004 WL 1535646 (D. Utah July 8, 2004); United States v. Moran, No. 02-10136-REK (D. Mass. July 8, 2004); United States v. Toro, No. 3:02cr362 (D. Conn. July 6, 2004); United States v. Monteiro, No. 1:03-cr-00135-SM (D.N.H. July 1, 2004); United States v. Shamblin, No. 2:03-00217, 2004 WL 1468561 (S.D. W.

---

[1] Only one court of which we are aware has declined to hold that Blakely applies to the federal sentencing guidelines, at least until the Supreme Court speaks more definitively. See United States v. Pineiro, No. 03-30437, 2004 WL 1543170 (5th Cir. July 12, 2004).

3

Va. June 30, 2004); <u>United States v. Watson</u>, CR 03-0146 (D.D.C. June 30, 2004); <u>United States v. Fanfan</u>, No. 03-47-P-H (D. Me. June 28, 2004); <u>United States v. Gonzalez</u>, No. 03 CR 41 (DAB), 2004 WL 1444872 (S.D.N.Y. June 28, 2004); <u>United States v. Green</u>, No. 02-10054-WGY, 2004 WL 1381101 (D. Mass. June 18, 2004).

We believe that option 2 is the correct approach because it is the only one that respects the Sixth Amendment right identified in <u>Blakely</u>, does not violate other constitutional rights of a defendant in a case in this posture, and does not conflict with the Sentencing Reform Act.[2]

---

[2] Only one court of which we are aware has followed option 1. See <u>United States v. Barry Landgarten</u>, No. 04-CR-70, 2004 U.S. Dist. LEXIS 13172 (July 12, 2004) (Weinstein, J.) (ordering sentencing jury to determine predicate facts for enhancement beyond a reasonable doubt where defendant pleaded guilty to embezzlement and government sought 8 level enhancement for amount of loss). The majority of courts have refused to follow option 1 primarily because no statutory mechanism authorizes it. In addition, a defendant in a federal case has a right to have "'every fact which is legally essential to the punishment' . . . charged in the indictment," <u>Blakely</u>, at 4 n.5, but it is too late to supersede. Furthermore, trying the defendant for a greater crime would violate the Double Jeopardy Clause. See <u>United States v. Booker</u>, No. 03-4225, slip op. at 9-10 (7th Cir. July 9, 2004) (noting that this procedure "will not work if the facts that the government would seek to establish in the sentencing hearing are elements of a statutory offense, for they would then have to be alleged in the indictment, and to re-indict at this stage would present a double-jeopardy issue.").

Similarly, only one court of which we are aware has followed option 3. See <u>United States v. Croxford</u>, No. 2:02-CR-00302 PGC, 2004 WL 1521560 (D. Utah July 7, 2004). However, that court did not consider that, by retroactively using indeterminate sentencing in pending cases and eliminating both the <u>Blakely</u> maximum and the fully adjusted Guidelines maximum, option 3 violates the fair notice component of the Due Process Clause and the *Ex Post Facto* Clause. See <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 353-54 (1964) ("If a . . . legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a . . . [c]ourt is barred from achieving precisely the same result by judicial construction."). This is inconsistent with the time-honored maxim that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." <u>United States ex rel. Attorney General v. Delaware & Hudson Co.</u>, 213 U.S. 366, 408 (1909). A panel of the Sixth Circuit Court of Appeals had followed option 3, but an *en banc* panel of that Circuit subsequently vacated and withdrew that ruling. <u>United States v. Tiffany Harris Montgomery</u>, No. 03-5256, 2004 WL 1562904 (6th Cir. July 14, 2004), *vacated, withdrawn*, Docket Order (6th Cir. July 19, 2004).

Other courts have rejected option 3 for several reasons: It evades <u>Blakely</u> by eliminating the relevant maximum sentence identified in <u>Blakely</u>, <u>Blakely</u> itself did not invalidate Washington state's guidelines, and it is not necessary to declare the entire Guidelines unconstitutional because the procedures according to which the Guidelines are imposed can be changed to respect the Sixth Amendment. See <u>Blakely</u>, at *7, 10; <u>Robert William Montgomery</u>, 2004 WL 1535646 at *3-4; <u>Shamblin</u>, 2004 WL 1468561 at *8-10.

4

Accordingly, like Blakely and the defendants sentenced under the Guidelines after <u>Blakely</u>, Cavallaro has a "legal right" to a sentence no greater than the Guidelines sentence that could be imposed solely on the basis of the facts admitted in his guilty plea. <u>Blakely</u>, at *7.

As noted above, we promptly requested a copy of Cavallaro's plea transcript after the <u>Blakely</u> ruling. The Court Reporter originally estimated that it would take until July 20, 2004 to prepare the transcript and subsequently informed defense counsel's office that the transcript will not be prepared until late Wednesday, July 21, 2004, sometime on Thursday, July 22, 2004 or by Monday, July 26, 2004 at the latest. To effectively advise Cavallaro with respect to his <u>Blakely</u> rights, undersigned counsel needs the transcript from the plea hearing to determine the precise facts he did or did not admit. If Cavallaro did not admit the predicate facts underlying the amount of tax loss, his offense level would be an offense level 6. <u>See</u> U.S.S.G. § 2T4.1(A) (1999 ed.), which, for first-time offenders like Cavallaro, constitutes a Zone A offense level and no sentence of imprisonment is required. <u>See</u> U.S.S.G. § 5C1.1(b).

In its sentencing memorandum, the government argues, half-heartedly and without any citation to supporting caselaw, that <u>Blakely</u> does not apply to the federal sentencing guidelines. <u>See</u> Govt Sent. Memo at 2 n.1 & 10-11. As explained above, the overwhelming majority of courts to consider the issue have ruled that <u>Blakely</u> does apply to sentencing under the federal guidelines and the government has offered no reason for this Court to rule otherwise.

The government also argues that, even if <u>Blakely</u> does apply, Cavallaro's sentence may be permissibly enhanced under it because Cavallaro agreed to the amount of tax loss in the plea agreement. <u>See</u> Gov't Sent. Mem. at 2, n.1 & 11. With respect to the government's argument about admissions in the plea agreement, it cannot be that by entering into that pre-<u>Blakely</u> plea agreement, Cavallaro knowingly and intentionally waived rights to have any of the predicate

5

facts underlying a sentencing enhancement submitted to a jury and proven beyond a reasonable doubt – rights that neither Cavallaro nor his defense counsel had any inkling ever existed.

Under those circumstances, Cavallaro did not waive his <u>Blakely</u> rights. Defendants, of course, may waive certain constitutional rights, <u>United States v. Teeter</u>, 257 F.3d 14, 22 (1st Cir. 2001), provided the waiver is "a voluntary and intentional relinquishment of a known right or privilege." <u>United States v. Gray</u>, 63 F.3d 57, 60 (1st Cir. 1995). <u>See</u> <u>United States v. Correa-Torres</u>, 326 F.3d 18, 22 (1st Cir. 2003) ("the waiver of virtually any right closely affecting individual liberty must be knowingly and voluntarily made").

When determining the validity of a waiver, courts look to the text of the plea agreement or at the content of the plea colloquy. <u>Teeter,</u> 257 F.3d at 24. Absent other evidence of knowledge of the right being waived, "the district judge must question the defendant specifically about her understanding of the waiver provision and adequately inform h[im] of its ramifications." <u>Id.</u> <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969) ("We cannot presume a waiver of these three important federal rights from a silent record."). Although the courts do not prescribe a particular formula for the colloquy, "the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and her acquiescence in the relinquishment of rights that it betokens." <u>Teeter</u>, 257 F.3d at 24 n. 7.

In general, the First Circuit has been wary of plea agreements where the defendant is not operating with full knowledge of the relevant law and consequences. <u>See, e.g.</u>, <u>United States v. Perez-Carrera</u>, 243 F.3d 42, 44 (1st Cir. 2001) (reducing sentence from ten to five years where maximum permissible sentence was ten years, but government and district court mistakenly indicated that five years was the maximum; sentence would be invalid if defendant relied on incorrect information); <u>Gray</u>, 63 F.3d at 60 (allowing withdrawal of a plea where defendant did

6

not understand that the sentence carried a mandatory minimum); United States v. Hernandez-Wilson, 186 F.3d 1, 5-6 (1st Cir. 1999) (setting aside guilty plea on the ground that defendant did not know he was not eligible for safety valve).

The limited number of courts that have considered waiver issues in the context of Blakely have ruled that a defendants prior admissions of facts do not constitute waivers of Blakely rights. E.g., United States v. Bryan Moran, No. 02-10136-REK (July 8, 2004) (rejecting argument that defendants waived Blakely rights through representations to prosecutor, stating: "I will not hold that a defendant has waived a right that he believed did not exist, that the Court believed did not exist, and that government counsel never told the court, if they believed otherwise, that they believed did exist. I will not do it. I think that would be a shocking denial of justice.") (excerpts of transcript, attached at Tab C, at 10, 15).

Consequently, we believe that Cavallaro should be provided an opportunity to review and analyze his plea hearing before sentencing in this case. Given the substantial Constitutional rights at stake, which will make the difference between an incarceratory and non-incarceratory guideline range, we think a short continuance to allow for the preparation of the plea transcript and the parties the opportunity to analyze it is appropriate and necessary.

## CONCLUSION

For the reasons explained above, we request that the Court: (1) set up a briefing schedule regarding any <u>Blakely</u> issues and all downward departure arguments with the defendant's materials due on or before Friday, July 30, 2004; and (2) schedule an evidentiary and sentencing hearing in mid-September, 2004.

        Respectfully submitted,

        _/s/ Michael A. Collora_

        Michael A. Collora (BBO #092940)
        Michael B. Galvin (BBO # 630515)
        DWYER & COLLORA, LLP
        600 Atlantic Avenue
        Boston, MA 02210
        671-371-1000

Dated: July 20, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 7/20/04.

_/s/_