EXHIBIT  1

178

NASHOBA VALLEY ALUMINUM, INC.

4/6/97

P. Cavallaro                                    $ 55,000⁰⁰

Fifty Five Thousand

LNB

---

NASHOBA VALLEY ALUMINUM, INC.                179
P. O. BOX 957
LITTLETON MA 01460                           55-457/113

4/6/97                    19

PAY TO THE
ORDER OF   E. CAVALLARO                    $ 55,000.⁰⁰

FIFTY FIVE THOUSAND                          DOLLARS

LNB

MEMO

⑈011304517⑈   025 473 8⑈ 0179   ⑈0005500000⑈

---

NASHOBA VALLEY ALUMINUM, INC.                1003
242 KING ST   PH. 508-486-3379
LITTLETON MA 01460

DATE 1-28-98

PAY TO THE
ORDER OF   Peter Cavallaro               $ 60,000⁰⁰

Sixty Thousand                           DOLLARS

BankBoston
BankBoston, N.A.

FOR

⑈0010030⑈ ⑈011000390⑈ 774 7580 2⑈   ⑈0006000000⑈

---

NASHOBA VALLEY ALUMINUM, INC.                1010
242 KING ST   PH. 508-486-3379
LITTLETON MA 01460                          55-391/113

DATE 5/29/98

Y THE
DER OF   Peter CAVALL                     $ 75,000⁰⁰

Seventy Five Thousand                    DOLLARS

BankBoston
BankBoston, N.A.

IR

⑈0010010⑈ ⑈011000390⑈ 774 7580 2⑈

---

NASHOBA VALLEY ALUMINUM, INC.                1011
242 KING ST   PH. 508-486-3379
LITTLETON MA 01460                          55-391/113

DATE 7/23/98

PAY
TO THE
ORDER OF   Elizabeth Cavallaro            $ 60,000⁰⁰

Sixty Thousand                           DOLLARS

BankBoston, N.A.

FOR  RPRACS 1004

⑈0010110⑈ ⑈011000390⑈ 774 7580 2⑈   ⑈0006000000⑈

REFERENCE COPY



REFERENCE COPY

EXHIBIT 2

14377                     B8766 H1 62     BAL.
                                          BRO'T
                                          FOR'D

DATE _____ 10-29-98 ____

TO _____ Ely Cavallano _____

_____ wages _____

FOR _____ to 11-1 _____     TOTAL     36,416.41

                            THIS
                            CHECK     150 —

                            OTHER     36,266.41

TAX
DEDUCTIBLE                   BALANCE


14378

DATE _____ 10-29-96 ____

TO _____ albert Morrill _____

_____ wages _____     325 —

FOR _____ to 11-1 ____ 35,55  TOTAL   36,266,

                            THIS
                            CHECK     290,

                            OTHER     35,976,

                            BALANCE   35976

                            Dep. 10/31    14015 ---

                            Dep 10/31     60,14 34

                            Dep. 10/31    50000 00

14379                       10/31         25,600 00

DATE _____ 10-31 ____                     131005 95

TO _____ Mary Collins _____

_____ 169383 _____

_____ 175264 _____

FOR _____ 175311 ____      TOTAL

                            THIS
                            CHECK     1395 —

                            OTHER

TAX
DEDUCTIBLE                   BALANCE

EXHIBIT W2-81



ALBANY ST WHOLESALE

SUBPOENA LMM

REF NUMBER              5312-18SEP
ACCOUNT NUMBER          51144827
TYPE                    OFFSUB
REELAY NUMBER           03803-21SEP00
33115616  02-NOV-98

NASHOBA VALLEY ALUMINUM, INC.
MARK J MONTANARI
508-486-8608
P O BOX 897
LITTLETON, MA 01460

0106

DATE 10/31/98

Poter CAVALL Aruo    $ 25,000

Twenty Fick Thousand    DOLLARS

BankBoston

ALBANY ST WHOLESALE

SUBPOENA LMM

REF NUMBER          5312-18SEP
ACCOUNT NUMBER      51144827
TYPE                OFFSUB
REELAY NUMBER       03802-21SEP00
33115618  02-NOV-98

271 morej i

EXHIBIT  3





*Harvard Medical School*

*Assistant Professor*
*of Psychiatry*

**Alison Fife, M.D., M.P.H.**

*148 Linden Street*
*Suite 105A*
*Wellesley, Massachusetts 02482*
*(781) 237-4044 Phone*
*(781) 237-4902 Fax*

## Psychiatric Evaluation

**Peter Cavallaro**
**DOB: 2/22/35**

Mr. Peter Cavallaro is a 69 year- old man who has pleaded guilty to the filing of false income tax returns. I was asked by the U.S Attorney's Office to do a psychiatric evaluation of Mr. Cavallaro. The evaluation consisted of a review of the various documents provided to me by the U.S. Attorney, including Mr. Cavallaro's medical and psychiatric records, the Government's Statement of Relevant Facts and Plea agreement, the Presentence Report, expert reports produced by the defendant, and my examination of Mr. Cavallaro on Friday, September 3rd, for approximately two hours.

Prior to my interview with Mr. Cavallaro, I explained to him that the evaluation was not confidential, and that I would be asked to provide a report to the Court, and perhaps be asked to testify at his sentencing hearing. Mr. Cavallaro understood the limits of confidentiality in this setting, and agreed to participate.

**History:**

Mr. Cavallaro was the youngest of 12 children born to a working class family who struggled with poverty. He graduated from high school, but often missed school days to work, and told me that he was determined from a young age not to eat stale bread as his father had. While in school, he had difficulty in reading and writing, and his strongest subject was math.

Throughout his life, starting at age 18, Mr. Cavallaro has worked long hours building up his various flower businesses, and has also been successful in real estate transactions.

Mr. Cavallaro has had a successful marriage to his current wife, Elizabeth. They married when he was 21 and she was 18. The Cavallaro's have raised three children. Their second child is adopted. They did have a full term still born baby after their first born, and to this day Mr. Cavallaro is sad about this; he cried during the interview when telling me about it.

While raising their three children, they experienced a great deal of difficulty with their daughter Patti, especially during her teenage years. Patti has since settled down, and they have a good relationship with her. Mr. Cavallaro has been extremely supportive of his children both emotionally and financially (for example, he bought for each of them their first homes).

In addition to the stress of having a still born baby, and difficult teenage years with Patti, Mr. Cavallaro's mother and father-in-law moved in with him and his wife 10 years ago. Also, his brother Samuel, with whom he was very close, died suddenly. And his daughter Patti went through a difficult divorce. Mr. Cavallaro added; that the stress from owning multiple business, including a start-up in North Reading, working very long hours, involving rising at 4 am (and at times not returning home until late in the day), all contributed to his anxiety, depression, and fatigue, such that he did not appropriately manage his money.

Mr. Cavallaro has pleaded guilty to filing false income tax returns for the years 1997 and 1998. Mr. Cavallaro reported that he simply signed the income tax returns done by his accountant, assuming they were correct, without reading them in detail. He also failed to report business income, which he viewed as income that the business owed him, since he had loaned his business money over many years. Mr. Cavallaro used some of this money for personal benefit.

Mr. Cavallaro asserts that he was not aware that he was doing anything inappropriate, and that he simply did not know that it may be wrong to not report the business income. He admits that he often did not keep written records of various transactions, and that he made various transactions in cash. Mr. Cavallaro blamed stress, mental fatigue, anxiety, and depression for his failure to appropriately manage his money, bills, and taxes.

**Psychiatric and Medical History:**

Mr. Cavallaro has a history of anxiety and depression, and he has sought treatment for both in the past. His treatment has been intermittent, with frequent visits to Emergency Departments for non-cardiac chest pain, and psychotherapy and psychopharmacology for anxiety and depression. He has been intermittently compliant with medication for anxiety and depression. At the times he took his Imipramine as prescribed (an antidepressant medication), his mood and anxiety were improved.

Mr. Cavallaro did not see a psychiatrist between the years 1995 and 1997. He has been in regular treatment with his Psychiatrist, Dr. Kerzner, since 2000. His diagnoses are Major Depressive Disorder, Recurrent, and Panic Disorder, and both have been present for approximately 20 years. He has a pattern of presenting for treatment when he is in crisis, resumes medications, feels better, and then comes back when he again is feeling unwell.

Mr. Cavallaro's medical history is significant for high blood pressure, adult onset diabetes, obesity, sleep apnea, hypercholesterolemia, benign prostatic hypertrophy, back surgery, a vasectomy and diverticulitis. His current medications include Imipramine 200

2

mgs (an antidepressant), Triamterine and Lisinopril (both for high blood pressure),
Metformin (for diabetes), Lipitor (for cholesterol) and Terazosin (for his enlarged
prostate).

## Substance Use:

Mr. Cavallaro does not have a history of alcohol or drug abuse.

## Legal History:

There is no prior criminal history. He has a history of involvement in civil lawsuits.

## Mental Status Examination:

Mr. Cavallaro presented on time for the evaluation. He was pleasant and cooperative
throughout. He displayed a wide range of affect, including some humor, depression,
sadness and anxiety. His mood and affect were mostly depressed and anxious. His speech
was clear and articulate. His thought content was significant for no delusions or
hallucinations and his thought process was linear (not tangential) and goal directed. He
was fully oriented, and alert. He expressed much shame and embarrassment over his
situation, and fully understands the gravity of his situation.

## Impressions:

Mr. Cavallaro has a history of Panic Disorder, and Major Depressive Disorder, Recurrent.
His medical conditions also contribute to his mental fatigue and stress in that he is obese,
has sleep apnea, high blood pressure, and diabetes. Neuropsychological testing reported
by Dr. Reade shows an overall performance in the average to low-average range, with
high scores on math, attention and mental processing speed, all in favor of someone with
the requisite skills to accurately keep track of and report income. His low scores were on
abstract reasoning and expression, impacting skills not associated with the task of
reporting income. His elevated scales of anxiety related to his physical health are simply
reality based. While he apparently met criteria for Avoidant Personality Disorder on one
measure, this has to do with avoidance of relationships or social situations, not with
avoidance of reporting of income. Although he has shown specific cognitive deficits,
specifically in the areas of organizational skills, he has had a relative strength in math, at
least per his records, and has by all accounts been very successful at a wide range of
business activities, despite these recent findings. Additionally, Mr. Cavallaro's issues
specifically involved active acts of omission of reporting income, and diversion of
money, rather than simply failing to read a tax return prepared by his accountant. His
reports of receiving payments, and directly paying whatever bills he had with the money,
without reporting it, was not a practice that has, in my view, anything to do with
depression or anxiety. Instead, I believe that he was simply not reporting the income. His
failure to keep written records of various loans he allegedly made to the company also
does not, in my view, have anything to do with anxiety and depression. There were in
fact times when this behavior was occurring when he was on his medication and not

3

depressed. He also admitted to keeping mental records of the money, suggesting that he had a clear understanding of where his money was going. He admits to using cash as a preferred method of payment to suppliers, for the purpose of receiving discounts, evidence that I believe supports a sophisticated understanding of the difficulty in tracking cash as income or payments. He managed to buy his children homes, purchase a property in Gloucester, and made various other transactions that seeming were unaffected by his alleged confusion and stress.

While one could argue that mental fatigue and stress negatively impacted various aspects of his life, I cannot support the notion he became mentally deficient to the point that it explains his lack of conformity to the law. Mr. Cavallaro was very successful at his various businesses, and by all accounts managed them well, and with attention to detail. All of this, in my opinion, goes any notion that Mr. Cavallaro's current legal situation, and avoidance of paying taxes, however it occurred, had any relationship to his history of psychiatric illness, namely intermittent anxiety and depression.

While it is true that his anxiety and mood are worse now as result of the penalties he may be facing, Mr. Cavallaro's psychiatric conditions can be reasonably expected to be easily and cost effectively cared for in the prison system. He may require monitoring for suicidal ideation or behavior, as all of these events have been significant blows to his self-esteem. His medical conditions are also common (high blood pressure, diabetes, sleep apnea, obesity), and many of them could benefit from a regime of regular diet and exercise.

Depression and anxiety are common in the general and prison population, and can be successfully managed with medication alone or medication and supportive or cognitive-behavioral therapy. Dr. Reade opines that, "because of psychiatric illness, (Mr. Cavallaro's) cognitive limitations and his avoidant personality style, he is limited in his ability to make informed judgments about complex accounting and bookkeeping matters, limited in his ability to manage paper, and limited in his ability to seek consultation when indicated". In contrast, it is my opinion that Mr. Cavallaro's psychiatric illness has been overstated in its interference with these abilities. Mr. Cavallaro's many businesses have been hugely successful, by any reasonable standard, while his symptoms were intermittent. Many millions of people lead productive and organized lives with both anxiety and depressive disorder at this level. I do not think his mild reading and attention problems completely explain his behavior, and I did not at all find evidence of avoidant personality disorder. He is a man who has been active in many businesses and with his family. His fears of flying, travel, and trying new things are consistent with Anxiety Disorder with Panic Attacks. However, it is not accurate to apply this label to him as a means to explain why he avoided the appropriate accounting of his income.

Mr. Cavallaro is an extremely pleasant and kind man, and presented to me as remorseful for his actions. He also displayed a warm sense of humor, telling me that he had thought of bringing me flowers, since he is in the flower business, but was advised by his attorney not to do so. At the conclusion of the interview he extended an invitation to see his businesses on Albany Street, with a genuine sense of pride and accomplishment.

4

In summary, it is my opinion that Mr. Cavallaro was aware that he was not reporting income, and was fully capable of doing so; he simply left many of the details of his business to his accountant, and diverted funds for personal use. Mr. Cavallaro has a history of Depression and Panic Disorder, but has shown overwhelming evidence of a level of success in business and real estate such that I cannot reasonably conclude that he was in any way impaired by these issues so as not to appreciate that his actions were wrong, or render him unable, or even less able, to conform to the law.

*Alan Lufe, MD*
*10/6/04.*

## CURRICULUM VITAE

| | |
|---|---|
| Date Prepared: | March 4, 2004 |
| Name: | Alison Fife, M.D., MPH |
| Office Address: | Department of Psychiatry, Brigham and Women's Hospital, 75 Francis Street, Boston, MA 02115 |
| | 148 Linden Street, Ste. 105A, Wellesley, MA 02482 |
| E-Mail Address: | afife@partners.org |

**Education:**

| | | |
|---|---|---|
| 1977-81 | B.A. | Wheaton College, Norton, MA |
| 1986 | M.D. | University of Cincinnati College of Medicine, Cincinnati, OH |
| 1996 | M.P.H. | Harvard School of Public Health, Boston, MA |

**Postdoctoral Training:**

| | | |
|---|---|---|
| 1986-87 | Medical Internship | University of Colorado, Health Sciences Center, Denver, CO |
| 1987-89 | Resident in Psychiatry | Tufts-New England Medical Center, Boston, MA |
| 1989-90 | Medicine Clinical Fellow | Mt. Auburn Hospital, Cambridge, MA |
| 1990-91 | Psychiatry Chief Resident | Brigham & Women's Hospital, Boston, MA |

**Licensure and Certification:**

| | |
|---|---|
| 1986 | Colorado |
| 1987 | Massachusetts |
| 1987 | Diplomate, National Board of Medical Examiners |
| 1992 | Diplomat, American Board of Psychiatry and Neurology |
| 1994 | Diplomat, American Board of Psychiatry and Neurology, Forensic Psychiatry Added Qualifications |

**Academic Appointments:**

| | |
|---|---|
| 1990-91 | Clinical Fellow in Medicine and Psychiatry, Harvard Medical School, Boston, MA |
| 1991-96 | Instructor in Psychiatry, Harvard Medical School |
| 1996- | Assistant Professor of Psychiatry, Harvard Medical School |

**Hospital Appointments:**

| | |
|---|---|
| 1990-92 | Emergency Room Psychiatrist, Brigham and Women's Hospital |
| 1991 | Attending Psychiatrist, Cardiac Transplantation Service Brigham and Women's Hospital |
| 1991-00 | Associate Physician, Brigham and Women's Hospital |
| 1991- | Medical Staff, Dana-Farber Cancer Institute, Boston, MA |
| 1992-93 | Rotation Director, Medical Psychiatry rotation, Massachusetts Mental Health Center for PGY III residents |
| 1992-93 | Interim Fellowship Director, Consultation-Liaison Service for PGY V Post-Residency Fellows, Brigham and Women's Hospital |
| 1992-0 | Course Director, Psychiatry in Medicine and Surgery, Department of Psychiatry, Brigham and Women's Hospital, Harvard Medical School |
| 1993 | Director, Medical Student Education, Department of Psychiatry, Brigham and Women's Hospital |
| 1993-01 | Associate Director, Consultation-Liaison Service, Department of Psychiatry, Brigham and Women's Hospital |
| 2000- | Attending Psychiatrist, Department of Psychiatry, Brigham and Women's Hospital |
| 2000- | Physician, Department of Psychiatry, Brigham and Women's Hospital |

**Other Professional Positions and Major Visiting Appointments:**

| | | |
|---|---|---|
| 1991-95 | Medical Staff | Mental Health Management of America, Boston, MA |
| 1996 | Medical Staff | Massachusetts Behavioral Health Partnership, Boston, MA |
| 1996-97 | Ethics Committee | Hearing Panel of the Massachusetts Psychiatric Society |

**Major Committee Assignments:**

| | | |
|---|---|---|
| 1991-95 | Committee for the Protection of Human Subjects from Research Risks | Brigham and Women's Hospital |
| 1992-94 | Psychiatry Emergency Services Development Committee | Brigham and Women's Hospital |
| 1993-04 | Quality Assurance and, Improvement Committee | Department of Psychiatry |
| 1992-93 | Task Force on Consultation-Liaison Psychiatry | Harvard Longwood Psychiatry Residency Training Program, Consolidated Harvard Medical School Department of Psychiatry |
| 1992-93 | Task Force on Alternatives to Hospitalization | Harvard Longwood Psychiatry Training Program, Consolidated Harvard Medical School Department of Psychiatry |
| 1992- | Women's Psychiatric Service, | Department of Psychiatry, Brigham and Women's Hospital |
| 1992-03 | Steering Committee | Department of Psychiatry, Brigham and Women's Hospital |
| 1993-94 | Orthopedics Care Improvement Project | Brigham and Women's Hospital |
| 1993-94 | Medical Student Education Executive Committee | Consolidated Harvard Medical School Department of Psychiatry |

3

| 1994-99 | Cost-Offset Committee | Department of Psychiatry, Brigham and Women's Hospital |
| 1994-00 | Career Development Committee | Department of Psychiatry, Brigham and Women's Hospital |
| 1995-96 | Medical Management Committee | Brigham and Women's Hospital |
| 1996 | Partners Psychiatry Care Models Committee | Brigham and Women's Hospital |
| 1996-98 | Ventures Committee | Department of Psychiatry, Brigham and Women's Hospital |
| 1996 | Physician Review Committee | Department of Psychiatry, Brigham and Women's Hospital |
| 1997 | Partners Health Care Task Force on Primary Care Physician Education | Brigham and Women's Hospital |
| 1998-00 | Front End Task Force Women's | Partners Psychiatry, Brigham and Hospital |

**Editorial Activities:**

| 1992- | Reviewer, <u>Academic Psychiatry</u> |

**Awards and Honors:**

| 1979 | Sophomore Prize in Biology, Wheaton College |
| 1981 | Magna cum Laude, Wheaton College |
| 1993 | Oliver Wendell Holmes Society Senior Fellow |
| 1995 | Junior Faculty Development Award, Association for Academic Psychiatry |
| 1998 | Honorarium: "Working with Non-Medical Clinicians", Medical Information Systems, Inc. |
| 2000 | Boston Magazine, "Top Doctors in Psychiatry". |

2001            Boston Magazine, "Top Doctors in Psychiatry".

**Professional Societies:**

    Memberships:

    1991-          American Psychiatric Association
    1991-02        Association for Academic Psychiatry
    1991-02        American Psychosomatic Society
    1992-02        Academy of Psychosomatic Medicine

**Major Research Interests:**

    1991-92        Research Psychiatrist:Fluoxetine versus Desipramine in Breast Cancer
                                           Patients with Major Depressive Disorder,
                                           Dana-Farber Cancer Institute and
                                         Brigham and Women's Hospital

    1992-93        Research Psychiatrist :Treatment of Endothelial Dysfunction in
                                           Patients with Coronary Arthrosclerosis

    1995            Research Psychiatrist      The Psychosocial Effects of Surgical
                                           Treatment Options for Breast Cancer

**Research, Teaching, and Clinical Contributions:**

    Narrative report of research, teaching and clinical contributions:

    As an Attending Psychiatrist on the Medical Psychiatry Service and the Addictions Psychiatry Service at Brigham and Women's Hospital, I consult to the Medical, Surgical, OB, and ED staff on urgent and emergent psychiatric and substance abuse issues. I supervise residents, fellows, and medical students rotating on our service. I am active in the administrative activities of the Department of Psychiatry at Brigham and Women's Hospital, as well as active in teaching in our Fellowship Program, and the Harvard Longwood Psychiatry Residency Training Program.

**Teaching Experience:**

    1990-          Instructor      Medical Psychiatry Elective and supervision for HMS
                    IVs
                    1-2 students/month
                    12 months

| 1990- | Instructor | Introduction to Clinical Medicine for HMS IIs |
|---|---|---|
| | 3-4 students, | |
| | 3 hours/week | |
| | 2 weeks/year | |

| 1990-91 | Preceptor | Patient-Doctor 111 for HMS IIIs |
|---|---|---|
| | 6 students, | |
| | 3 hours/week/year | |

| 1990-00 | Instructor | Psychiatry 700 for HMS IIs |
|---|---|---|
| | 12 students, | |
| | 3 hours/week | |
| | 13 weeks/year | |

| 1998 | Preceptor | Transition to Practice seminar for PGY IV residents |
|---|---|---|
| | 10-12 residents, | |
| | 1 hour/year | |

| 1998 | Preceptor | Patient-Doctor II Course, Objective structured |
|---|---|---|
| | 10 students | clinical examination |
| | 4 hour/year | |

**Local and Teaching Presentations:**

| 1993 | Presentation, "Psychopharmacology of Prozac". CME course in psychiatry, Harvard Medical School |
|---|---|
| 1992 | Lecture on "Psychiatric Emergencies", Emergency Room Grand Rounds, Brigham and Women's Hospital |
| 1995 | Lecture on "Depression, Anxiety and Domestic Violence", Women in Medicine seminar, Brigham and Women's Hospital |
| 1996 | Lecture on "Anxiety Disorders in Medical Patients", Women's Health Service, Brigham and Women's Hospital |
| 1998 | Presentation "Psychosocial Effects of Enhanced External Counterpulsation: A Technology to Counter Mood Disturbance in the Angina Patient", Academy of Psychosomatic Medicine, Annual Meeting, S.L. Springer, M.D., Presenter |

6

Report of Clinical Activities:

      Consultation to Medical, Surgical, Obstetrics/Gynecology, and Emergency Department staff at Brigham and Women's Hospital for hospitalized patients with co-morbid medical and psychiatric disorders and substance abuse.

      Outpatient care of psychiatric patients with a variety of psychiatric disorders.

## BIBLIOGRAPHY:

Clinical Communications:

Fife A, Fricchione GL.  BWH Medical Psychiatry Service Quality Assessment/Improvement Policy Manual, 1993.

Reviews, Chapters, Editorials:

1.      Fife A.  Book Review. Bass, Christopher (eds) Somatization: Physical Symptoms and Psychological Illness. NEJM 1991; 325:1259

2.      Minden S, Fife A.  Anxiety Disorders. In: Branch WT. ed. Office Practice of Medicine. Philadelphia, PA, W.B. Saunders, 1994; pp999-1012.

3.      Carbone L, Baskef A, Orav EJ, Fife A, Fricchione GL, Minden S, Borus J. Psychiatric Symptoms and Medical Utilization in Primary Care Patients. Psychosomatics, Vol. 41, No. 6, 2000.

4.      Borus JF, Barsky AJ, Carbone LA, Fife A, Fricchione GL, Minden SL.  Consultation-Liaison Cost Offset:  Search for the Wrong Grail.  Psychosomatics 41(4):285, August, 2000.

5.      Fife A, Schreiber J,.  Psychiatric Emergencies: Violence.  UpToDate®, Vol. 9, No. 3, 2001.

6.      Fife A, Schreiber J.  Psychiatric Emergencies: Agitation and Aggression. UpToDate®, Vol. 19, No. 3, 2001.

7.      Fife A, Schreiber J.  Psychiatric Emergencies: Suidical Ideation and Behavior. UpToDate®, Vol. 9, No. 3, 2001.

8.      Springer S, Fife A, Lawson W, Hui J, Jandorf L, Cohn P, Fricchione G.  Psychosocial Effects of Enhanced External Counterpulsation in the Angina Patient: A Second Study.  Psychosomatics, Vol. 42(2), 124-132, 2001.

EXHIBIT  4



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

**VIA FAX**

*U.S. Custom House*
*2nd & Chestnut Streets - 7th Floor*
*Philadelphia, PA. 19106*

September 30, 2004

Michael Pineault, Esquire
Assistant U.S. Attorney
U.S. Attorney's Office for the
    District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

    Re:  <u>United States v. Peter Cavallaro, Sr.</u>

Dear Mr. Pineault:

    This letter is in response to your recent inquiry concerning
the Federal Bureau of Prisons (BOP's) ability to provide
necessary and appropriate medical care for the defendant Peter
Cavallaro, Sr. ("Mr Cavallaro") should he be incarcerated in a
federal correctional facility.

    I have reviewed the documents concerning Mr. Cavallaro's
medical condition that you provided to this office, namely a
defense memorandum and attachments dated July 20, 2004, and
extensive medical records and hospital reports.  The
aforementioned documents suggest that Mr. Cavallaro suffers from
diabetes, sleep apnea, hypertension, diverticulitis, elevated
cholesterol, prostatic hypertrophy and has a history of major
depression and panic disorder.  The records also indicate that he
currently utilizes a C-PAP sleep disorder device and is
prescribed the following medications: Triamterene, Lisinopril,
Metformin, Lipitor, Terazosin and Imipramine.

    Based on my review of Mr. Cavallaro's records, I do not
anticipate any difficulty in BOP's ability to provide adequate
and appropriate care to him, either in a BOP medical referral
center or in a general population institution.

    With respect to Mr. Cavallaro's physical conditions, BOP
currently treats thousands of inmates with the same or similar
conditions, including approximately 4,000 inmates with Type II
diabetes and 25,000 inmates with hypertension.  Because of the
number of inmates who suffer from these conditions, BOP has
established specific chronic care programs designed to better

monitor and facilitate the provision of appropriate medical
services, including diabetic care clinics and hypertension care
clinics.  I anticipate that Mr. Cavallaro would most likely be
enrolled to participate in both of the latter programs.

     BOP also has available in its formulary the medications
necessary to treat Mr. Cavallaro's conditions.  Several of the
specific medications that he currently is taking are listed on
the formulary, including Triamterene, Lisinopril, Metformin, and
Imipramine.  Although the formulary does not include Lipitor and
Terazosin, it does include acceptable substitutes for these two
medications.  Moreover, if BOP physicians determine that it is
medically necessary for Mr. Cavallaro to receive medications that
are not on the formulary, BOP has procedures through which such
medications can be requested, authorized and obtained.

     With regard to the C-PAP machine that Mr. Cavallaro has used
in the past in connection with his sleep apnea, the BOP routinely
allows inmates to possess and use this type of medical device.
If his BOP treating physicians determine that a C-PAP machine is
necessary for Mr. Cavallaro's sleep apnea, it will be issued.

     With respect to Mr. Cavallaro's history of major depression
and panic disorder, all Bureau institutions employ full time
psychologists.  In addition, BOP has psychiatrists on staff at a
number of facilities.  These staff are trained and in fact
provide outpatient and, where necessary, inpatient mental health
services to thousands of inmates suffering from depression,
anxiety and panic issues, among other conditions.  Such services
include individual and group counseling sessions and psychiatric
medications.  By way of example, during the most recent fiscal
year for which statistics have been compiled, BOP psychologists
conducted 248,358 mental health intake assessments, provided
approximately 60,604 sessions of individual therapy and crisis
counseling, and conducted 3,765 suicide risk assessments and
1,811 suicide watches.  *See Federal Bureau of Prisons: State of
the Bureau 2003*, at 16.[1]  As a further illustration, between
May 1, 2003 and April 30, 2004, BOP spent nearly $3.8 million on
antidepressants for its inmate population.  Currently 4,003
inmates suffer from depression and/or panic disorders.

     It is not possible for me to set forth at this time the
precise treatment plan that would be provided to Mr. Cavallaro in
the event that he is incarcerated.  That determination will be
made by Health Service staff upon his arrival, following physical
and mental health examinations and further review of his up-to-
date medical records.  What I can say, based upon my review of
the information provided to me, is that the medical and
psychiatric conditions that Mr. Cavallaro presents, and the
treatment that he has been receiving, fall well within the scope
of the conditions and treatments that BOP provides to substantial
numbers of inmates.

_____

     [1]A  complete  copy  of  this  annual  report  is  available  at
http://www.bop.gov/ipapg/ipasob2003.pdf.

With respect to the cost that BOP will incur to provide care to Mr. Cavallaro, as noted above, BOP routinely provides comparable care to considerable numbers of inmates suffering from the same conditions with which Mr. Cavallaro has been diagnosed. In addition to the approximately $3.8 million that BOP spent on antidepressants between May 1, 2003 and April 30, 2004, an additional $572,000 was spent on diabetic medications and nearly $2.4 million on cardiovascular medications, including hypertension. The BOP's average daily medical rate per inmate is $10.84 for inmates in general population institutions and $44.85, for inmates in federal medical centers. I do not anticipate that Mr. Cavallaro's care will be more complicated or more costly than the care required by other inmates who present the same conditions. Therefore, I expect that the expense of providing care to him will fall somewhere within the foregoing range.

My focus in this letter has been to address the particular conditions presented by Mr. Cavallaro, and BOP's specific experience with and ability to provide appropriate care for those conditions. More general information concerning the full range of medical and mental health services provided by the BOP's Health Services Division can be found in the *Legal Resource Guide to the Federal Bureau of Prisons: 2004*, at pages 28-34, which is available on the web at http://www.bop.gov/ipapg/legal_guide.pdf.

For the reasons that I have explained, and based on the information provided to me and my knowledge of BOP's medical resources, the medical and mental health conditions presented by Mr. Cavallaro are conditions that the BOP has considerable experience treating. It is my opinion that the BOP will be able to provide appropriate care for Mr. Cavallaro.

Sincerely,

Barbara J. Cadogan
Health Systems Administrator