UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL ACTION NO. 04-10100-PBS |
| PETER CAVALLARO, SR. | ) ) ) | |

DEFENDANT'S REPLY TO OPPOSITION
TO DOWNWARD DEPARTURE MOTION

To correct some of the errors in the Government's Opposition to the Defendant's Motion for Downward Departure ("Govt Opp."), Defendant Peter Cavallaro, Sr. submits this brief reply memorandum.

I.  The Government – Not Mr. Cavallaro – Filed Untimely Materials.

Notwithstanding the years the government spent investigating Mr. Cavallaro, its admitted receipt of the defendant's expert reports and medical records three months ago, and the lengthy submission it made last Friday, October 8, 2004, including reports from its expert psychiatrist and a BOP administrator, the government complains that it did not have sufficient time to prepare for sentencing because Mr. Cavallaro filed his motion for downward departure one week before sentencing, the date this Court set for "both sides" – including the government– to file additional materials.  7/22/04 Tr. at 15 ("I'm simply saying that if you're going to submit additional materials, from both sides, it should be at least a week before … the continued hearing.").  Although the government obviously had additional materials to file – including materials responsive to the issues the Court raised at the last hearing, such as Dr. Fife's report and a letter from BOP – the government failed to submit them before that deadline.

Attempting to divert attention from its own untimely filing, the government instead tries to shift the focus to Mr. Cavallaro, claiming that his timely filing failed to comply with an even earlier deadline provided in the plea agreement. (Govt Opp. at 1 & n.1, 13-14.) That is not true. As counsel for the government well knows (but does not tell this Court), after the parties entered into the plea agreement, the government made yet another request of Mr. Cavallaro: submit to an examination by the government's own forensic psychiatrist, which Mr. Cavallaro agreed to, *provided* the government would disclose that psychiatrist's report in sufficient time prior to sentencing to permit review and analysis of it by the defense and its experts. See e-mail correspondence between AUSA Pineault and undersigned counsel, attached at Tab A, at 4. The government failed to do that. Despite repeated promises to provide Dr. Fife's report during September (id., at 1-3), the government did not produce it until Thursday, October 7, 2004 – one day *after* this Court's deadline for filing all materials from "both sides," and eight days *after* the deadline it now suggests should be enforced. Id., at 8-9 (fax cover sheet and letter to final report dated 10/7/04). The government's position advocating striking late filings would lead to exclusion of its own materials.[1]

Given the government's own failure to comply with its own and this Court's deadlines, it should not be heard to complain about the timing of any aspect of Mr. Cavallaro's departure motion, including his aberrant conduct argument, which the government now seeks to strike. See Govt Opp. at 14. First, as explained in his initial motion, each of Mr. Cavallaro's departure

---

[1] It does not matter that the government faxed a "draft" report from Dr. Fife on Monday, October 4, 2004. See e-mail at 6. The "draft" could (and did) change. Moreover, two days was not enough time to permit Dr. Reade to review and analyze work that evidently took Dr. Fife two months to perform. Similarly, that counsel for the government told undersigned counsel in early September what Dr. Fife's ultimate conclusion would be (id. at 4) was not an adequate disclosure for review and analysis. As described below and in Dr. Reade's supplemental report, it is the flaws in Dr. Fife's methods and procedures – none of which was revealed by counsel for the government – that result in the flaws in Dr. Fife's opinions.

2

arguments is interrelated, and without Dr. Fife's report it was not possible to gauge the strength of the diminished capacity argument or to know how much weight to accord to Mr. Cavallaro's other departure arguments. That is precisely why we insisted on Dr. Fife's report in advance of sentencing. Second, the government's claim of prejudice from a condensed briefing time is hardly convincing. It conducted an exhaustive, multiyear investigation of Mr. Cavallaro, during which it interviewed many of the people who wrote on Mr. Cavallaro's behalf and heard most, if not all, of the same arguments about his charitable behavior and overpayment of taxes from those people and/or defense counsel. The government has been on notice that Mr. Cavallaro would seek an aberrant conduct departure for over five months. See Plea Agreement, Tab 2 to PSR, at 4. Contradicting its own claim of being unable to prepare a response, the government submitted a detailed argument, with citations to numerous cases, explaining why, in its view, an aberrant conduct departure is not appropriate.

II.  There Are Sufficient Mitigating Circumstances – Taken Individually or Collectively – To Warrant a Downward Departure to a Non-Incarceratory Sentence.

    A.  Mr. Cavallaro's Age and Physical Infirmity.

The government makes two related arguments why Mr. Cavallaro is not entitled to a departure under sections 5H1.1 or 5H1.4: (1) because he is well enough to work; (2) because BOP claims can provide treatment for Mr. Cavallaro's conditions. (Govt Opp. at 7-13). Mr. Cavallaro addressed the government's second argument in his prior filing (Defendant's Memo. at 18 n.2), which the government has not rebutted and therefore will not be repeated.

The government's "well-enough-to-work" argument attempts to erect a barrier to age and infirmity departures that does not exist in the Guidelines. By their plain language, these sections do not require a finding that defendant is not well enough to work; instead, they authorize a departure whenever a defendant is "elderly and infirm" and where home confinement would be

3

"equally efficient as and less costly than incarceration" U.S.S.G. § 5H1.1, or, for a "seriously infirm defendant" where home detention "may be as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4.

Undersigned counsel has not found a single case where such a departure turned on whether or not the defendant was working. And for good reason – the ability to work in itself has little bearing on whether someone is physically infirm: one could be infirm and work from a desk; conversely, many others choose not to work despite being fully capable of doing so. What the government is really arguing is that sections 5H1.1 and 5H1.4 departures should be reserved for those "at death door" or confined to bed, an argument that has been rejected in this District as unsupported by the language of the Guidelines. See United States v. Willis, 322 F. Supp.2d 76, 83-84 & n.12 (D. Mass. 2004) (rejecting argument and departing downward for 69-year-old defendant charged with tax offense who suffered from numerous serious, though not imminently life-threatening, physical ailments).[2]

Instead of adding elements that do not exist, Mr. Cavallaro has argued for a departure under the language of section 5H1.1 as written because he is old enough and has more than sufficient physical ailments to render him "elderly and infirm." Even if this Court considers Mr. Cavallaro's work schedule as a part of that analysis, several points should be considered. First, he no longer performs the manual tasks he once did; his work these days is entirely supervisory in nature and is performed almost entirely sitting down and mostly by telephone. See Cavallaro, Jr. Aff., App. 449-51, ¶¶ 5-12; see also Cavallaro medical records (noting Mr. Cavallaro's "sedentary" lifestyle). Second, given Mr. Cavallaro's financial condition, he is not working because he financially has to – rather, he does so because of his ingrained work-ethic, and

---

[2] Although not reflected in the published opinion, counsel for Mr. Willis informed undersigned counsel that the Mr. Willis was working at the time of sentencing even though he was deemed to be infirm for purposes of sections 5H1.1 and 5H1.4.

4

because working helps him pass time, feel productive and avoid depression and anxiety. See Reade, App. 378-82. Many "infirm" people with those same traits continue to work up until the day they die. It cannot be that their decision to do so automatically disqualifies them for departures under section 5H1.1 or 5H1.4.

Finally, the government simply overstates the cases where it claimed a court denied departures where defendants suffered from serious physical illnesses. First, nearly all of the cases it cites involve departures based solely on physical condition under section 5H1.4, and not also based on age and infirmity under section 5H1.1, as the case here. E.g., United States v. Johnson, 318 F.3d 821, 824 (8th Cir. 2003) (discretion not abused for choosing not to depart under section 5H1.4 only); United States v. Woodward, 277 F.3d 87 92, 93 (1st Cir. 2002) (same); United States v. Persico, 164 F.3d 796, 801 (2d Cir. 1999) (same); United States v. LeBlanc, 24 F.3d 340, 348-49 (1st Cir. 1994) (same); United States v. Guajardo, 950 F.2d 203, 208 (5th Cir. 1991) (same); United States v. Carey, 895 F.2d 318, 324 (7th Cir. 1990) (same). Second, the government overstates the holdings in other cases. For example, the government cites the First Circuit's 2003 opinion in United States v. Jujan, 324 F.3d 27 (1st Cir. 2003), affirming the sentencing court's refusal to depart under section 5H1.4 where the defendant suffered from cirrhosis and calcified arteries. See Govt Opp. at 11. The government omits any mention of the fact that the sentencing court in that case more recently ruled that defense counsel had been constitutionally ineffective at sentencing for filing a "rather weak" departure motion unsupported by available medical records and a letter from his physician, like those submitted by Mr. Cavallaro, that would have qualified the defendant for a departure. United States v. Lujan, No. 04-247, 2004 WL 2044302 at *2-3, 5-6 (D.N.H. Sept. 14, 2004) (granting defendant's habeas petition).

5

B.  Mr. Cavallaro's Diminished Mental Capacity Contributed to His Offense Conduct.

Without disputing that Mr. Cavallaro suffers from longstanding psychiatric illnesses and mental problems for which he has been under regular treatment for over twenty years, the government argues he is still not entitled to a departure on that basis primarily because: (1) he has been too financially successful to have suffered from diminished capacity; and (2) his offense conduct was too simple and straightforward to be affected by any such limitations.  Govt Opp. at 3-6.  In support of those arguments, the government submits and relies on the report of Dr. Fife, which, as noted above, the government produced to the defense on October 7, 2004, the day after the Court's filing deadline.

The government is wrong that Mr. Cavallaro's business and financial successes mean his mental capacity was not diminished.  Psychiatric illness is not restricted to those who are down-and-out; it afflicts people across the economic spectrum, even those who achieve measures of success in certain aspects of their lives.  Such success does not justify ignoring those aspects of their lives affected by their mental disorders, which in this case includes Mr. Cavallaro's overall cognitive abilities, his ability to resolve complex problems, and avoidance of tasks that he cannot adequately perform, including things requiring him to read, such as his lengthy tax returns.  See Reade, App. 383-84; Stone, App. 394-95.  The government's efforts to paint Mr. Cavallaro as a shrewd and sophisticated tycoon – while completely overlooking the significant impairments that pervade aspects of his life, such as his inability to watch the television news because it is too confusing (Reade, App. 376) – is unavailing and unsupported by the record.  Cf. United States v. Shore, 143 F. Supp.2d 74, 82-83 (D. Mass. 2001) (rejecting government's argument that defendant's abilities as a businesswoman were inconsistent with psychological disorders of depression and post traumatic stress; defendant's socioeconomic ability to obtain experts for

6

sentencing "does not … justify ignoring [defendant's] evident and debilitating psychiatric problems."); United States v. Ribot, 97 F. Supp.2d 74, 82-83 (D.Mass. 1999) (defendant - who was "praised by Boston's leadership" for his extraordinary contributions as a community leader - was entitled to a downward departure under § 5K2.13 due to his severe depression); United States v. Skodnek, 933 F. Supp. 1108, 1122 (D. Mass. 1996) (downward departure based on defendant's mental illness appropriate under § 5K2.13 although defendant "worth millions"); United States v. Herbert, 902 F. Supp. 827, 829-30 (N.D. Ill. 1995) (successful business owner entitled to downward departure under § 5K2.13 based on her "longstanding mental and emotional problems" and "depressed state").

The government is equally wrong that the offense conduct was so simple that it could not be affected by Mr. Cavallaro's mental disorders and cognitive limitations. First, it should be pointed out that other courts in similar tax cases have departed downward on this basis, (see Defendant's Memo. at 24-25 (citing cases)), and the government fails to cite a single case to support its argument that tax cases are too simplistic for section 5K2.13 departures. The fact is that even for competent individuals taxes are often confusing; the complexity increases exponentially when complicating factors are added such as repayments of personal loans, interest income and capital gain, as was the case here. See Defendant's Memo. at 9-10 (explaining why tax ramifications of transactions were not simple). Second, while defense counsel disputes the government's claim that the offense conduct is one of "commission" versus one of "omission," the label does not matter: Mr. Cavallaro's offense occurred when he signed and filed, without reading or reviewing, a tax form that understated his actual income. Both Doctors Reade and Stone believe that Mr. Cavallaro's Major Depressive Disorder, Panic Disorder, Anxiety Disorder, Avoidant Personality Disorder and objectively measurable cognitive limitations

7

contributed, at least to some degree, to that offense behavior. See United States v. Aker, 181 F.3d 167, 174 (1st Cir. 1999) (§ 5K2.13 departure appropriate where diminished capacity "contributed to some extent to the commission of the offense.").

Despite the late production of Dr. Fife's written psychiatric evaluation, Dr. Reade has reviewed it and the transcript of Dr. Fife's interview of Mr. Cavallaro and found Dr. Fife's conclusory evaluation replete with distortions and errors. See Letter of Julia M. Reade, dated 10/11/04, attached at Tab B, at 1. Dr. Reade disagrees with Dr. Fife's ultimate opinion, which she expressed as follows:

> All of this, in my opinion, goes [sic] any notion that Mr. Cavallaro's current legal situation, and avoidance of paying taxes, however it occurred, had any relationship to his history of psychiatric illness, namely intermittent anxiety and depression.

Fife at 4. And Dr. Fife's errors, in Dr. Reade's opinion, go beyond mere "carelessness or haste," and undermine the validity of her entire evaluation. See 10/11/04 Reade letter at 1.

Dr. Fife's misstatements directly undermine the few "facts" she cite in support of her opinion, such as her assertion that Mr. Cavallaro "blamed" fatigue and confusion for his failure to review his returns when, in fact, the transcript demonstrates that Mr. Cavallaro told Dr. Fife he was not sure how those factors contributed, stating "I'd just be confused a lot of times." Id. at 1-2. Similarly, Dr. Fife wrote that Mr. Cavallaro "admits that he did not keep written records of various transactions, and that he made various transactions in cash," when, in fact, Mr. Cavallaro told Dr. Fife that he kept paperwork detailing the "cash receipts." Dr. Fife also misrepresented and dismissed the results of the objectively verifiable neuropsychological testing, claiming Mr. Cavallaro scored "high" scores in math, attention and processing speed, when in reality his scores in those areas were "average" and only "high" relative to his low scores in other areas, such as reading and novel problem solving. See id. at 2; Stone, App. 397, at 6.

8

In the end, Dr. Reade concludes that Dr. Fife did "not grapple in any meaningful way with any of the data that contradict her unsupported assertions, and instead mischaracterizes Mr. Cavallaro as a willful and knowingly deceptive man." 10/11/04 Reade letter, Tab B at 3. Dr. Reade remains convinced that "Mr. Cavallaro's mental capacity was diminished during the offense conduct" for the reasons explained in her previous report. Id. We ask this Court to come to the same conclusion.

## CONCLUSION

For the reasons described above, and in Defendant's Sentencing Memorandum and Motion for a Downward Departure, the Defendant respectfully requests that the Court impose following sentence: (1) one year of Probation with a special condition that the defendant remain in home confinement for six months without electronic monitoring; (2) a fine at the high end of the appropriate range; and (3) a special assessment.

> Respectfully submitted,
>
> /s/ Michael B. Galvin_____
> Michael A. Collora (BBO #092940)
> Michael B. Galvin (BBO # 630515)
> DWYER & COLLORA, LLP
> 600 Atlantic Avenue
> Boston, MA  02210
> 671-371-1000

Dated: October 12, 2004